

**FILED**
**Aug 22, 2024**
**02:58 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | | |
|---|---|---|
| HARRY HEADLEY, | ) | **Docket No.: 2023-07-7479** |
|     Employee, | ) | |
| v. | ) | **State File No.: 68020-2023** |
| ROADSTAR, LLC, | ) | |
|     Employer, | ) | **Judge Robert Durham** |
| And | ) | |
| NATIONAL LIABILITY AND | ) | |
| FIRE INS. CO., | ) | |
|     Insurer. | ) | |

---

### EXPEDITED HEARING ORDER DENYING BENEFITS

---

The Court held an Expedited Hearing on August 15, 2024, to determine whether Roadstar must give Mr. Headley a panel of pulmonologists. Roadstar denied his request because it authorized treatment with a pulmonologist. The Court holds Mr. Headley is not likely to prove at trial that he is entitled to a panel.

### History of Claim

Mr. Headley inhaled chemicals from a fire extinguisher when he accidentally discharged it into his face on June 28, 2023. He immediately had difficulty breathing, and Roadstar authorized him to treat at a clinic.

After several visits, Mr. Headley continued to suffer breathing problems, numbness, and fatigue. The clinician recommended he see a pulmonologist after a chest x-ray revealed possible lung damage. On September 7, Roadstar presented a panel that only included walk-in clinics. The next day, Roadstar sent another panel that included orthopedists but no pulmonologists.

In her affidavit, Rachel Whitemen, the adjuster for Roadstar, explained that she could only locate two pulmonologists within 100 miles of Mr. Headley's home who would accept workers' compensation patients. One was Dr. Kumar Yogesh, but she could not

1

reach his office by telephone. The other pulmonologist's first available appointment was not until December, which she authorized.

Mr. Headley felt he needed treatment sooner than December and asked to see Dr. Yogesh after the urgent-care clinician recommended him. Ms. Whitemen told him that while his office would not return her call, he was welcome to try reaching out to Dr. Yogesh on his own.

Mr. Headley visited Dr. Yogesh's office on October 11 and asked him to treat even if it meant charging his personal insurance. When Dr. Yogesh agreed, Ms. Whitemen authorized treatment.

Dr. Yogesh's first note revealed that Mr. Headley complained of weakness, fatigue, and dizziness. A chest x-ray was consistent with "resolving infiltrate." Pulmonary functional tests showed diminished lung capacity. Dr. Yogesh diagnosed acute but unspecified respiratory conditions due to chemical inhalation and prescribed a bronchodilator and inhaled steroids. He also ordered blood work to determine the source of Mr. Headley's fatigue.

Mr. Headley returned a month later. The blood work revealed no abnormalities, although Mr. Headley complained his fatigue and weakness had worsened. He also complained of chronic shortness of breath and said that while the inhaler helped, he had to take more than the recommended 12 inhaler puffs a day. Dr. Yogesh did not diagnose Mr. Headley's complaints but ordered additional medication and tests.

Mr. Headley's final visit was in December. His lung-volume test showed saturation at 95%. Dr. Yogesh also reviewed an October CT scan that he said did not reveal any infiltrates. Dr. Yogesh advised Mr. Headley to continue with the inhaler and an inhaled corticosteroid for unspecified shortness of breath.

At this point, Mr. Headley became dissatisfied with Dr. Yogesh's treatment and requested a panel of pulmonologists. Ms. Whitemen refused but said that he was free to continue treating with Dr. Yogesh. Mr. Headley then sought treatment on his own with Dr. James Carruth, whom he testified had a different diagnosis than Dr. Yogesh, but he did not submit his records as an exhibit.

**Findings of Fact and Conclusions of Law**

To obtain the requested panel, Mr. Headley does not have to prove at this stage every essential element of his claim by a preponderance of the evidence. Instead, he must show a likelihood of prevailing at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2023).

2

Here, Mr. Headley's position is simple: Roadstar authorized Dr. Yogesh, but it did not give him a panel. Now, it must do so, since he has expressed his dissatisfaction with Dr. Yogesh. For its part, Roadstar does not contest that Mr. Headley suffered a compensable work-related injury or that it must pay for medical care "made reasonably necessary" by this injury under Section 50-6-204(a)(1)(A). It also concedes that it did not submit a panel of doctors as mandated by Section 50-6-204(a)(3)(A)(i). However, it asserts that it offered reasonable and necessary care by agreeing to his request and authorizing Dr. Yogesh to treat him.

In support of their positions, both parties cited to pre-reform case law. Mr. Headley quoted the Supreme Court in *Employers Insurance of Wausau v. Carter*, 522 S.W.2d 174, 176 (Tenn. 1975), which held that "[r]eferring the employee to a single physician does not comply with the statute; it is an usurpation of the privilege of the employee to choose the ultimate treating physician." Roadstar cited several Supreme Court cases holding that a failure to give the employee a panel did not necessarily obligate the employer to pay for unauthorized medical expenses. Instead, the issue often turned on whether the employee was justified in seeking additional treatment without consulting the employer. *See*, *e.g. Pickett v. Chattanooga Convalescent & Nursing Home, Inc.,* 627 S.W.2d 941, 944 (Tenn. 1982). However, neither party referred to any case law directly on point.

The Appeals Board has addressed the issue of "new panels" in several post-reform cases, and decisions have fallen on both sides.

For example, in *Lamm v. E. Miller Construction, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 38, at *14 (June 2, 2017), the employee claimed a low back injury, and the employer sent him to an urgent-care clinic, where he saw a nurse practitioner three times. The nurse practitioner then denied causation after discussion with her supervising physician, and the employer denied the claim. The trial court ordered the employer to submit a panel, so the employee could choose authorized care.

On appeal, the Board held that the employer did not meet its statutory obligation to offer a panel of doctors, and authorizing the supervising doctor at the clinic did not relieve the employer's responsibility to do so. Thus, "under the circumstances presented at this stage of the proceedings," the Board affirmed the trial court's order, even though the employee did not have proof of causation. *Id.* at *17.

However, in *Berdnik v. Fairfield Glade Community Club*, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *16 (May 18, 2017), the Appeals Board reversed the trial court's order to authorize a panel. In this case, the employer did not submit a panel but sent the employee to an evaluating doctor, who said her back condition was not work-related. The Appeals Board said the employer did not have to issue a panel, since the only medical evidence established that the employee's work did not cause her low-back condition.

3

Other Board decisions about whether the law warranted a new panel of doctors also turned on the facts of each case. In *Limberakis v. Pro-Tech Security, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *10 (Sept. 12, 2017), the Board held the employer must submit a new panel if the original authorized doctor refused to treat the employee. In *Baker v. Electrolux*, 2017 TN Wrk. Comp. App. Bd. LEXIS 65, at *9 (Oct. 20, 2017), the Board decided that an employee was not entitled to a new panel, because she became dissatisfied with the authorized doctor's treatment and nothing indicated the doctor refused to continue seeing her or was offering inadequate treatment.

As these and other cases illustrate, the law does not mandate that the employer must offer a panel in every case where it failed to give a proper one initially. However, it does not preclude it, either. The Court must determine whether the circumstances of this case merit the provision of a new panel. After consideration, the Court finds that they do not.

One factor that distinguishes Mr. Headley's case from others where the court required the employer to issue a new panel is that he requested that Roadstar authorize Dr. Yogesh as his authorized physician. While the Court disagrees with Roadstar's contention that Mr. Headley had more discretion in choosing his authorized physician than others who received proper panels, the fact that he pursued treatment with Dr. Yogesh before Roadstar authorized him is significant.

Additionally, Mr. Headley has not shown that he is likely to prove that Roadstar has not offered "reasonably necessary" treatment under section 50-6-204(a)(1)(A) for his work-related injury. He did not offer any medical proof that Dr. Yogesh is unqualified to treat him, that his treatment has been deficient, or that Dr. Yogesh is unwilling to continue seeing him. As stated in *Baker*, Mr. Headley's dissatisfaction with Dr. Yogesh is not enough reason to merit a new authorized physician. So the Court denies Mr. Headley's request.

However, Roadstar's admitted failure to give a panel is not without consequences. The Court refers Roadstar to the Bureau's Compliance Program for a penalty determination under Tennessee Code Annotated section 50-6-118(a)(9).

IT IS, THEREFORE, ORDERED:

1. Mr. Headley's request for a panel of pulmonologists is denied. Dr. Yogesh shall remain his authorized physician to treat his work-related injury of June 28, 2023.

2. This case is referred to the Bureau's Compliance Program to determine if, and to what extent, a penalty is warranted.

3. This case is set for a Scheduling Hearing on **October 17, 2024, at 10:00 a.m. Central Time**. The parties must call 615-253-0010. Failure to appear might

4

result in a determination of the issues without the party's participation.

**ENTERED August 22, 2024.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Panel of Physicians
2. First Report of Work Injury
3. Various emails between adjuster and Mr. Headley
4. Additional emails
5. Petition for Benefit Determination with attached statement
6. Dr. Yogesh's medical records
7. Rule 72 Statement from Rachel Whitemen

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on August 22, 2024.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Drew Saulters, Employee's Attorney | | | X | dsaulters@ortalekelley.com |
| Emily Faulkner, Employer's Attorney | | | X | Emily.Faulkner@mgclaw.com |
| Compliance Progam | | | X | WCCompliance.Progam@tn.gov |

_____
**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*